TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-01-00357-CV







Brazos Electric Power Cooperative, Inc., Appellant


 

v.



Public Utility Commission and TXU Electric Company, Appellees








DIRECT APPEAL FROM PUBLIC UTILITY COMMISSION OF TEXAS






 In an original proceeding in this Court, brought under the provisions of section
39.001(e) and (f) of the Public Utility Regulatory Act (PURA), (1) Brazos Electric Power Cooperative,
Inc., and others ("Brazos") (2) challenge certain rules promulgated by the Public Utility Commission
(the "Commission"). See Tex. Util. Code Ann. §§ 39.001(e), (f) (West 1998 & Supp. 2003)
(hereafter, "PURA § "). The ultimate issue on appeal is whether the rules in question enlarge the
powers of the Commission beyond those delegated to the agency in PURA.

 We have considered the issues under familiar precepts, namely: As a body
constituted by statute, the Commission cannot possess inherent powers but only those conferred upon
the agency by clear and express statutory language plus any additional power reasonably necessary
to perform a function or duty that the legislature has required of the agency in express terms. See
Public Util. Comm'n v. City Pub. Serv. Bd., 53 S.W.3d 310, 316 (Tex. 2001) (citing Sexton v. Mt.
Olivet Cem. Ass'n, 720 S.W.2d 129, 137 (Tex. App.--Austin 1986, writ ref'd n.r.e.)). We believe
the rules are within the Commission's delegated powers for the reasons given hereafter.

 Brazos is an "electric cooperative" as that term is defined in PURA section
11.003(9)(A). (3) It generates, procures, and transmits electricity that it sells at wholesale only, using
the transmission facilities of the Electric Reliability Council of Texas (ERCOT). (4) Brazos's facilities
are not used for the distribution of electricity to retail customers--those who purchase and ultimately
consume electricity measured by a separate meter. (5) Because Brazos is an electric cooperative that
owns and "operates facilities used for the transmission of electricity," it is a "[t]ransmission service
provider (TSP)" under Commission rules. (6) And because Brazos does not sell to retail customers,
it is not a "[d]istribution service provider (DSP)" under those rules. (7)

 Brazos complains of three Commission rules. The first two require Commission
approval of an electric cooperative's tariffs; the third requires open access to an electric
cooperative's facilities at the distribution level.


TARIFF APPROVAL

 Brazos contends Commission rules 25.191(c) and 25.198(a)-(c) exceed the agency's
statutory powers under the precepts mentioned above. Rule 25.191(c) pertains to "transmission
service" (8) provided by TSPs, including electric cooperatives, and requires that "[t]ransmission service
shall be provided pursuant to . . . commission-approved tariffs. . . ." (9)

 Rule 25.198(a)-(c) directs as follows regarding use of ERCOT transmission facilities
for the sale of electricity:



 Initiating service. Where a transmission service customer uses the transmission
facilities in [ERCOT] . . . to make sales of energy to a third party, it shall apply
for transmission service pursuant to . . . commission-approved tariffs.

 Conditions precedent for receiving service. Subject to . . . commission-approved tariffs, the TSP will provide transmission service to any transmission
service customer [subject to certain provisos].

 Procedures for initiating transmission service. A transmission service customer
requesting transmission service . . . must comply with . . . commission-approved
tariffs." (10)




PURA Chapter 39

 Brazos's complaints regarding the foregoing rules arise in the context of recent
legislation directed at a "Restructuring of [the] Electric Utility Industry" wherein the legislature
found that "except for transmission and distribution services . . . electric services and their prices
should be determined by customer choices and the normal forces of competition." PURA
§ 39.001(a) (emphasis added). From the exception stated, one may reasonably infer a corollary
legislative finding that transmission and distribution services must, in the public interest, remain
subject to governmental regulation as opposed to regulation by "customer choices and the normal
forces of competition." Save for certain specified and limited exceptions, however, Chapter 39 of
the 1999 legislation does not apply to an electric cooperative. (11) PURA § 39.002. And should a
conflict arise between any specific provision of PURA except Chapter 41 ("Electric Cooperatives
and Competition"), the specific provision of Chapter 39 is intended to control. Id. Stated another
way, the legislature did not intend to make any specific provision of Chapter 39 controlling over a
conflicting provision found in Chapter 41. We turn then to the applicable provisions found in
Chapter 41.


PURA Chapter 41

 As indicated by its title ("Electric Cooperatives and Competition"), Chapter 41
regulates electric cooperatives in matters pertaining to competition. It "governs the transition to and
the establishment of a fully competitive electric power industry for electric cooperatives." PURA
§ 41.001. The legislature expressly declared its intention that Chapter 41 control in such matters
"[n]otwithstanding any other provision of law" save the following:


PURA section 39.155 (requiring that an electric cooperative report certain aspects of
its operations to the Commission if it owns generation facilities and offers electricity
for sale in Texas);


PURA section 39.157(e) (requiring the Commission to establish by rule a code of
conduct to protect against anticompetitive practices);


PURA section 39.203 (regulating transmission and distribution service);


PURA section 39.903 (establishing a system benefit fund to assist low-income
electric customers); and, 


PURA section 39.904 (concerning legislative goals for renewable energy).



PURA § 41.001. It must be noted, however, that the foregoing PURA sections 39.157(e), 39.203,
39.903 and 39.904 pertain only to electric cooperatives that offer "customer choice" among retail
providers of electricity. See PURA § 39.002. Brazos does not offer customer choice. The same is
*not true, however, regarding a final exception stated in PURA section 41.001; the provisions of
Chapter 41 do not control over any PURA "sections in which the term 'electric cooperative' is
specifically used." PURA § 41.001.

 The word "rate" is employed in certain sections of Chapter 41 mentioned hereafter. 
For the purposes of that chapter, the word includes "any compensation, tariff, charge, fare, toll, rental
or classification that is directly or indirectly demanded, observed, charged, or collected by an electric
cooperative . . . ." PURA § 41.002(2) (emphasis added).

 Chapter 41 delimits as follows the Commission's jurisdiction in the area of "Electric
Cooperatives and Competition":


Except as specifically provided otherwise in this chapter, the commission has
jurisdiction over electric cooperatives only as follows:



 to regulate wholesale transmission rates and service, including terms of access,
to the extent provided in Subchapter A, Chapter 35.



* * * 



 to establish terms and conditions, but not rates, for open access to distribution
facilities for electric cooperatives providing customer choice, as provided in
Section 39.203.




PURA § 41.004(1), (4) (emphasis added).

 Similarly, Chapter 41 spells out the jurisdiction of an electric cooperative's board of
directors as follows:


A board of directors has exclusive jurisdiction to:


 (1) set all terms of access, conditions, and rates applicable to services provided by
the electric cooperative, except as provided by Sections 41.054 ["Service
Outside Certificated Area"] and 41.056 ["Anticompetitive Actions"], including
nondiscriminatory and comparable rates for distribution but excluding
wholesale transmission rates, terms of access, and conditions for wholesale
transmission service set by the commission under Subchapter A, Chapter 35,
provided that the rates for distribution established by the electric cooperative
shall be comparable to the distribution rates that apply to the electric
cooperative and its subsidiaries;


 (2) determine whether to unbundle any energy-related activities and, if the board
of directors chooses to unbundle, whether to do so structurally or functionally.


* * * 


(10) sell electric energy and capacity at wholesale, regardless of whether the electric
cooperative participates in customer choice; and


(11) make any other decisions affecting the electric cooperative's method of
conducting business that are not inconsistent with the provisions of this
chapter.



PURA § 41.055(1), (2), (10), (11) (emphasis added).

 As we understand the foregoing provisions of PURA sections 41.004 and 41.055, the
legislature divided authority between a board of directors and the Commission as follows:

 Section 41.004(1) vests in the Commission jurisdiction to "regulate" wholesale
transmission rates and service, including terms of access, to the extent provided in Chapter 35; and,
section 41.055(1) excludes that power from those assigned to an electric cooperative's board of
directors.

 Section 41.004(4) vests jurisdiction in the Commission to establish terms and
conditions, but not rates, for open access to distribution facilities when the electric utility provides
customer choice; and section 41.055(1) mandates that rates for distribution, established by the board
of directors, be comparable to distribution rates applicable to the electric cooperative and its
subsidiaries.

 Rather plainly, the legislature believed Chapter 35 vested in the Commission some
power "to regulate wholesale transmission rates and service, including terms of access," PURA
§ 41.004(1), as well as jurisdiction to "establish terms and conditions, but not rates, for open access
to distribution facilities for electric cooperatives providing customer choice." PURA § 41.004(4).
What then does Chapter 35 provide in that regard?


PURA Chapter 35

 As employed in Chapter 35, the term "electric utility" includes an electric cooperative
and a municipally owned utility. PURA § 35.001. If an electric cooperative is "[a] provider of
generation," as Brazos is, the cooperative "may compete for the business of selling power." PURA
§ 35.002. If an electric cooperative owns or operates transmission facilities, as Brazos does, the
cooperative is subject to the following provisions of PURA section 35.004:



 An electric utility or transmission and distribution utility that owns or operates
transmission facilities shall provide wholesale transmission service at rates and
terms, including terms of access, that are comparable to the rates and terms of
the utility's own use of its system.

 The commission shall ensure that an electric utility or transmission and
distribution utility provides nondiscriminatory access to wholesale transmission
service for qualifying facilities, exempt wholesale generators, power marketers,
power generation companies, retail electric providers, and other electric utilities
or transmission and distribution utilities.

 When an electric utility, electric cooperative, or transmission and distribution
utility provides wholesale transmission service within ERCOT at the request of
a third party, the commission shall ensure that the utility recovers [its]
reasonable costs in providing wholesale transmission services necessary for the
transaction from the entity for which the transmission is provided so that the
utility's other customers do not bear the costs of the service.

 The commission shall price wholesale transmission services within ERCOT
based on the postage stamp method of pricing under which a transmission-owning utility's rate is based on the ERCOT utilities' combined annual costs of
transmission divided by the total demand placed on the combined transmission
systems of all such transmission-owning utilities within a power region.
. . . Notwithstanding Section 36.201, the commission may approve wholesale
rates that may be periodically adjusted to ensure timely recovery of transmission
investment. (12)
 The commission shall ensure that ancillary services necessary to facilitate the
transmission of electric energy are available at reasonable prices with terms and
conditions that are not unreasonably preferential, prejudicial, discriminatory,
predatory, or anticompetitive.




PURA § 35.004(a)-(e) (emphasis added).

 PURA section 35.005(a) empowers the Commission to "require an electric utility,"
which by statutory definition includes an electric cooperative, "to provide transmission service at
wholesale to another electric utility, a qualifying facility, an exempt wholesale generator, or a power
marketer and may determine whether the terms for the transmission service are reasonable." PURA
§ 35.005(a) (emphasis added).

 The Commission is directed to "adopt rules relating to wholesale transmission
service, rates, and access," and the rules so adopted "must be consistent with the standards" set
forth in sections 35.001-.0081. PURA § 35.005(a) (emphasis added).

 Unless an electric utility's tariff is included in another electric utility's tariff, "an
electric utility that owns or operates a transmission facility shall file a tariff in compliance with
commission rules adopted under Section 35.006." PURA § 35.007(a), (b) (emphasis added).

 "The commission may require that each party to a dispute concerning prices or terms
of wholesale transmission service engage in a nonbinding alternative dispute resolution process
before seeking resolution of the dispute by the commission." PURA § 35.008 (emphasis added). 


Discussion and Holdings

 Brazos argues that under PURA section 41.004(1) the Commission may derive power
over an electric cooperative's rates solely from some provision found in PURA Chapter 35; and, the
supreme court declared expressly in City Public Service Board that Chapter 35 "contains no explicit
grant of ratemaking authority. Nor is the power to set rates initially by rule necessarily implied from
the specific authority" that Chapter 35 does confer upon the Commission. City Pub. Serv. Bd., 53
S.W.3d at 318-19. Consequently, Brazos concludes, the Commission was powerless to promulgate
rules 25.191(c) and 25.198(a)-(c) requiring agency approval of an electric cooperative's
transmission-service tariffs. We believe the supreme court's decision in City Public Service Board
compels a different conclusion here because the rules assailed by Brazos are fundamentally different
from those questioned in City Public Service Board.

 The Commission rules challenged in City Public Service Board laid down specific
formulae for calculating a "facilities charge" for transmission service; and, the rules required each
ERCOT utility to pay all other ERCOT utilities an amount of money resulting from application of
the formulae to each utility's ERCOT operations. The only formula questioned in the case measured
one component of the facilities charge--an "access fee." The Commission applied this formula in
a series of contested cases to arrive at the amount of money required of each ERCOT utility as its
access fee. City Pub. Serv. Bd., 53 S.W.3d at 313-14.

 In its opinion, the supreme court first rejected the Commission's contention that the
access-fee formula did not set rates at all, but merely established a "pricing methodology." (13) Id. at
316. After finding the formula was indeed a "rate," the court inquired whether PURA Chapter 35,
expressly or by necessary implication, empowered the Commission to set rates for transmission
service provided by a municipally owned utility.

 The court set forth at the beginning its conclusion that "chapter 35 contains no
explicit grant of ratemaking authority [and] no power to set rates initially by rule," nor is such power
"necessarily implied [in] the specific authority chapter 35 does" confer upon the Commission. Id.
at 318-19 (emphasis added). We cannot avoid quoting at length the reasons given by the court in
support of its conclusion. The court wrote as follows:


 First, chapter 35 lacks the clear language the Legislature used in chapter 36
[pertaining to ratemaking authority over investor-owned utilities]--nowhere does
chapter 35 give the Commission the explicit power to "establish and regulate rates." 
Nor does chapter 35 contain any detail comparable to chapter 36's provisions
regarding the factors to be considered in setting wholesale transmission rates. . . .


 Moreover, the specific powers that chapter 35 gives the Commission do not
necessarily imply the authority to set rates. The Commission is to "adopt rules
relating to wholesale transmission service, rates, and access," which must be
consistent with Chapter 35's standards. [PURA § 35.006(a)(1).] Excluding the
specific power to "adopt rates" in favor of the power to "adopt rules relating to . . .
rates" suggests that the Legislature deliberately declined to give the Commission the
same kind of authority that it has under Chapter 36. . . . 


 Similarly, the specific power to review rates for reasonableness, which Chapter
35 explicitly gives the Commission, is distinct from the power to set rates in the first
instance. [State v. Southwestern Bell Tel. Co., 526 S.W.2d 526, 529-30 (Tex. 1975).]
. . . .


 Chapter 35 gives the Commission other express powers as well. The
Commission is to ensure that all utilities provide nondiscriminatory access to
transmission service. [PURA § 35.004(b).] The Commission may also require a
utility to provide wholesale transmission service to another utility, and may
determine whether the terms for the transmission service are reasonable. [PURA
§ 35.005(a).] And, when a utility provides transmission service at a third party's
request, the Commission is to ensure that the utility recovers its reasonable costs
from the entity receiving the services so that the utility's customers [do not] bear
those costs. [PURA § 35.004(c).] None of these powers and duties grants or
necessarily requires the ability to initially set wholesale transmission rates. . . . 


 . . . .


 Finally, the Commission may require that parties to a dispute "concerning prices
or terms of wholesale transmission service" engage in a nonbinding dispute
resolution process before coming to the Commission to resolve the dispute. [PURA
§ 35.008.] But if all rates for wholesale transmission service are set up front, there
will be no "dispute concerning prices." The Commission rules thereby render this
part of the statute meaningless. . . .


 In sum, we agree with the court of appeals that chapter 35 envisions largely an
oversight role for the Commission with respect to wholesale transmission
transactions. . . . Once confronted with a dispute between utilities, the Commission
can arrive at a reasonable rate to resolve that dispute. The Commission also has the
option to refer parties to alternative dispute resolution to settle disputes over
transmission service pricing. Moreover, to ensure that utilities are providing
comparable prices and services and nondiscriminatory access, and to protect a
utility's customers from bearing others' transmission costs, the Commission has the
independent ability to order utilities to appear before it even without a dispute.
[PURA § 35.004(a)-(c).]



City Pub. Serv. Bd., 53 S.W.3d at 318-20 (emphasis added) (some citations omitted; balance moved
from footnotes to text).

 In its discourse on the powers granted the Commission in Chapter 35, the supreme
court's references to the "initial" setting of rates for transmission service and to the "oversight role"
of the agency, and the court's citation to State v. Southwestern Bell Telephone Co., are quite
meaningful and instructive for our purposes here.

 In State v. Southwestern Bell Telephone Co., 526 S.W.2d 526, 528 (Tex. 1975), the
court dealt with the separation-of-powers problem that arises under the State constitution when a
court is called upon to review utility rates fixed by the utility itself or by a regulatory agency. The
division of power between a court, on the one hand, and the agency or utility on the other, runs along
the following line: the fixing of rates and tariffs is not a judicial function but a court may determine
whether a rate or tariff fixed initially by the utility or the agency is or is not lawful, in light of such
statutory or constitutional standards as reasonableness, nondiscrimination, confiscation, and so forth. 
See id. at 529-30.

 By confirming the Commission's "oversight role" respecting wholesale-transmission
service and the agency's administration of Chapter 35, we believe the court in City Public Service
Board had in mind a role and power analogous to that of a court reviewing rates and tariffs fixed
initially by a utility subject to that chapter. Like a court, the Commission may not initially set a rate
or frame a tariff for an electric cooperative; however, the agency may review for approval a tariff
prescribed initially by the cooperative to determine if its contents are reasonable and consistent with
the standards prescribed in PURA sections 35.003 and 35.004: comparable prices and services,
nondiscriminatory access, and protection against a utility's customers bearing transmission costs that
should be borne by others. See PURA §§ 35.003, .004. And for these purposes, "the Commission
has the independent ability to order utilities to appear before it even without a dispute." City Pub.
Serv. Bd., 53 S.W.3d at 320. We believe this is the tenor and effect of the statutes and Commission
rules 25.191(c) and 25.198(a)-(c) at issue in the present litigation.

 PURA section 35.007 explicitly requires the filing of tariffs with the Commission,
and these must comply with commission rules adopted under PURA section 35.006 "relating to
wholesale transmission service, rates, and access." (14) PURA §§ 35.006(a), .007(a). Nothing we have
found in PURA purports to prescribe the contents of such a tariff beyond what may be inferred from
a constitutional provision or Chapter 35.

 While rules 25.191(c) and 25.198(a)-(c) require Commission approval of such tariffs,
nothing in the rules themselves purports to dictate any rate or other element of those tariffs as did
the rules involved in City Public Service Board. Instead, rules 25.191(c) and 25.198(a)-(c) merely
assume as a requisite fact the existence of "commission approved tariffs." This implies, in our view,
that the rules leave the content of the tariffs to the discretion of the electricity provider in the first
instance.

 Brazos points out that PURA section 35.004(d) prescribes a postage-stamp method
of pricing that utilizes a divisor equal to "the total demand placed on the combined transmission
systems of all . . . transmission-owning utilities within a power region"; and while nothing in PURA
purports to define the term "transmission system," the Commission itself has done so in its rule
25.5(83) as follows:


Transmission system--The transmission facilities at or above 60 kilovolts owned,
controlled, operated, or supported by a transmission service provider or transmission
service customer that are used to provide transmission service. 


PURA § 35.004(d) (emphasis added); 16 Tex. Admin. Code § 25.5(83) (2002). Because the rule
definition excludes transmission facilities below 60 kilovolts, Brazos concludes the Commission is
powerless to apply the postage-stamp method prescribed in PURA section 35.004(d) to wholesale
transactions over distribution facilities (those below 60 kilovolts). We should therefore, Brazos
contends, declare invalid rules 25.191(c) and 25.198(a)-(c) "to the extent such rules require electric
cooperatives . . . to obtain Commission approval of [Brazos's] rates and tariffs for transmission
service over its distribution facilities." See Cobra Oil & Gas Corp. v. Sadler, 447 S.W.2d 887, 892
(Tex. 1968).

 We disagree. The Commission's rules found in Chapter 25 of the Texas
Administrative Code contain other provisions that preclude, it seems to us, the legal effect Brazos
attributes to the definition found in rule 25.5(83). A TSP must


provide comparable transmission service . . . even if the TSP's interconnection with
the transmission service customer is through distribution, rather than transmission
facilities. An electric cooperative that has not opted for customer choice . . . shall
provide wholesale transmission service at distribution voltage when necessary to
serve a wholesale customer.



16 Tex. Admin. Code § 25.191(d)(2) (2002). And "[a] TSP . . . that owns facilities for the delivery
of electricity to a transmission service customer purchasing electricity at wholesale using facilities
rated at less than 60 kilovolts shall provide the customer access to its facilities on a non-discriminatory basis." Id. § 25.191(d)(2)(A). Finally, 


[a] TSP . . . shall provide access to its facilities at the distribution level to a
transmission service customer, in order to transmit power to a retail customer in an
area in which the transmission service customer has the right to provide retail electric
service. Such service shall be provided on a non-discriminatory basis and in
accordance with PURA § 39.203(h). 



Id. § 25.191(d)(2)(B).


 As mentioned heretofore, rules 25.191(c) and 25.198(a)-(c) do not themselves purport
to dictate any rate or other element of tariffs the Commission approves. Brazos's complaint is, we
believe, actually a challenge to the terms dictated by the legislature in PURA section 35.004(d): it
contains no exception for wholesale transmission via distribution facilities. Brazos does not,
however, suggest any reason why that statute should be set aside.

 We conclude rules 25.191(c) and 25.198(a)-(c) do not amount to ratemaking by the
Commission; and, they are within the agency's delegated power and duty to adopt rules consistent
with PURA sections 35.002-.0081. See PURA § 35.006(a)(1). Rules 25.191(c) and 25.198(a)-(c)
are the only rules challenged in the present litigation. They do not deal with the process by which
the Commission's approval of a tariff is obtained; nor is it contended here that the Commission has
unlawfully approved or refused to approve a tariff.

 We overrule Brazos's assignment of error complaining that the two rules exceed the
Commission's statutory power because they amount to ratemaking. 


OPEN ACCESS TO DISTRIBUTION FACILITIES

 Brazos contends rule 25.191(d)(2)(B) extends the Commission's authority beyond
its statutory powers by requiring electric cooperatives to provide open access to their facilities at the
distribution level although they have not opted for customer choice. The rule provides as follows:



 Obligation to provide transmission service. Each TSP in ERCOT shall provide
transmission service in accordance with the provisions of Division 1 of this
subchapter.



* * * 



 
 The obligation to provide comparable transmission service applies to a
TSP, even if the TSP's interconnection with the transmission service
customer is through distribution, rather than transmission facilities. An
electric cooperative that has not opted for customer choice . . . shall provide
wholesale transmission service at distribution voltage when necessary to
serve a wholesale customer.
 




 
 
 A TSP . . . that owns facilities for the delivery of electricity to a
transmission service customer purchasing electricity at wholesale
using facilities rated at less than 60 kilovolts shall provide the
customer access to its facilities on a non-discriminatory basis.

 A TSP . . . shall provide access to its facilities at the distribution level
to a transmission service customer, in order to transmit power to a
retail customer in an area in which the transmission service customer
has the right to provide retail electric service. Such service shall be
provided on a non-discriminatory basis and in accordance with PURA
§ 39.203(h). (15)
 
 



16 Tex. Admin. Code § 25.191(d)(2) (emphasis added).

 Brazos does not offer customer choice. When they do not offer customer choice,
electric cooperatives are governed generally by PURA Chapter 41 in matters pertaining to
competition; and "[n]otwithstanding any other provision of law, except" PURA section 39.203 and
other named sections, Chapter 41 "governs the transition to and the establishment of a fully
competitive electric power industry for electric cooperatives. Regarding the regulation of electric
cooperatives, [Chapter 41] shall control over any other provision of [PURA], except for sections in
which the term 'electric cooperative' is specifically used." PURA § 41.001 (emphasis added).

 Chapter 41 declares, however, that "the commission has jurisdiction over electric
cooperatives" in certain particulars. Among them is jurisdiction "to regulate wholesale transmission
rates and service, including terms of access, to the extent provided in Subchapter A, Chapter 35,"
PURA § 41.004(1) (emphasis added); and, jurisdiction "to establish terms and conditions, but not
rates, for open access to distribution facilities for electric cooperatives providing customer choice,
as provided in Section 39.203." PURA § 41.004(4) (emphasis added). From these two subsections
of PURA section 41.004, the following propositions are evident: (1) the Commission has
jurisdiction over electric cooperatives to regulate terms of access to the extent provided in
Subchapter A, Chapter 35 (PURA § 41.004(1)); and, the Commission has jurisdiction over electric
cooperatives to regulate open access to distribution facilities concerning cooperatives that provide
customer choice, as provided in PURA section 39.203 (PURA § 41.004(4)).

 Finally, Chapter 41 provides expressly that an "electric cooperative shall provide
nondiscriminatory open access for retail service" if it chooses to participate in customer choice. 
PURA § 41.053(a). As mentioned previously, Brazos has not elected to participate in customer
choice.

 From the foregoing provisions of Chapter 41, Brazos derives a general legislative
intention that electric cooperatives should be exempt from the provisions of Chapter 39, governing
retail competition, when they do not offer customer choice. (This speaks to PURA § 41.004(4) only,
not PURA § 41.004(1)). Upon this premise, Brazos contends rule 25.191(d)(2)(B) offends against
and exceeds the legislative intention because the rule purports to require an electric cooperative to
provide open access to its facilities for the transmission of electricity directly to a retail customer,
notwithstanding that Brazos has chosen not to provide customer choice.

 As indicated above, PURA section 39.203 is expressly excepted from the scope,
force, and effect of Chapter 41. Section 39.203 regulates transmission and distribution services;
however, section 39.203 applies in general only to an electric cooperative that offers customer
choice. See PURA § 39.002. Nevertheless, the legislature provided as follows in Chapter 39:
"When necessary to serve a wholesale customer an . . . electric cooperative that has not opted for
customer choice . . . shall provide wholesale transmission service at distribution voltage." PURA
§ 39.203(b) (emphasis added). The Commission contends this provision of Chapter 35 empowers
the agency to adopt rule 25.191(d)(2)(B) when construed with other PURA provisions.

 By its terms, PURA section 39.203(b) applies only in cases where it is "necessary to
serve a wholesale customer." The Commission points out that rule 25.191(d)(2)(B) requires that an
electric cooperative "provide access . . . at the distribution level to a transmission service customer"
only; and, by the agency's definition of that term "[a] retail customer . . . may not be a transmission
service customer." 16 Tex. Admin. Code § 25.5(81) (2002) (emphasis added).

 Brazos rejoins in a reply brief that the restriction in rule 25.5(81) is not found in rule
25.191(d)(2)(B) itself, and on its face, the latter rule requires an electric cooperative to provide open
access to its facilities in order to transmit electricity to a retail customer even though the cooperative
has not elected to provide customer choice.

 We believe Brazos's interpretation of rule 25.191(d)(2)(B) is unreasonable. The
object of the second preposition ("to") in the first sentence of the rule is "transmission service
customer," not a "retail customer" receiving service from a "transmission service customer." By rule
25.5(81), the Commission has made it abundantly clear that a "retail customer" cannot be a
"transmission service customer."

 More informative still are the provisions of Chapter 35. Section 41.004(1) states
specifically that the Commission has jurisdiction over electric cooperatives to regulate terms of
access to the extent provided in Subchapter A, Chapter 35. PURA § 41.004(1). In that subchapter,
the legislature explicitly made electric cooperatives subject to its terms (PURA § 35.001) and
directed the Commission to adopt rules, relating to wholesale transmission access, consistent with
the standards set out in the subchapter. PURA § 35.006(a)(1). Among such standards, applicable
to wholesale-transmission service, are provisions: (1) prohibiting undue preferences, PURA
§ 35.003(b); (2) requiring terms of access comparable to a utility's terms of access to its own system,
PURA § 35.004(a); and (3) requiring the Commission to ensure non-discriminatory access, PURA
§ 35.004(b).

 We hold the Commission's rule 25.191(d)(2)(B) is within the powers delegated to
the agency as set forth above, and overrule Brazos's assignment of error. 

 Finding no error, we affirm rules 25.191(c), 25.191(d)(2)(B), and 25.198(a)-(c). See
PURA § 39.001(f).



 __________________________________________

 John E. Powers, Justice


Before Justices Kidd, B. A. Smith and Powers*


Affirmed


Filed: December 19, 2002


Publish












* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. Tex. Util. Code Ann. §§ 11.001-64.158 (West 1998 & Supp. 2003).
2. In addition to Brazos, the following join in the cause in opposition to the rules: Texas
Electric Cooperatives, Inc.; Caprock Electric Cooperative, Inc.; City of Denton, Texas; and Tex-La
Electric Cooperative of Texas, Inc. For convenience, we refer to all collectively as "Brazos."
3. As used in PURA, the term "electric cooperative" means, for present purposes, a
corporation organized and operating under PURA Chapter 161. PURA § 11.003(9)(A). Chapter 161
provides for the incorporation, operation, and dissolution of electric-cooperative corporations. 
PURA §§ 161.001-161.254.
4. "ERCOT" designates "the organization and, in a geographic sense, . . . the area served by
electric utilities, municipally owned utilities, and electric cooperatives that are not synchronously
interconnected with electric utilities outside" Texas. 16 Tex. Admin. Code § 25.5(22) (2002); see
PURA § 31.002(5); see also Public Util. Comm'n v. City Pub. Serv. Bd., 53 S.W.2d 310, 312 (Tex.
2001).
5. See 16 Tex. Admin. Code § 25.5(63), (69) (2002).
6. Id. § 25.5(82).
7. Id. § 25.5(20).
8. The term "transmission service" means "[s]ervice that allows a transmission service
customer to use the transmission and distribution facilities of . . . electric cooperatives . . . to
efficiently and economically utilize generation resources to reliably serve its loads and to deliver
power to another transmission service customer[,]" including a wide variety of related services and
activities. 16 Tex. Admin. Code § 25.5(80) (2002). The term "transmission service customer"
means "[a] transmission service provider, distribution service provider, river authority, municipally-owned utility, electric cooperative, power generation company, retail electric provider" and others;
provided, however, a retail customer may not be a transmission service customer. Id. § 25.5(81).
9. 16 Tex. Admin. Code § 25.191(c) (2002).
10. 16 Tex. Admin. Code § 25.198(a)-(c) (2002). The word "tariff" means "[t]he schedule
of . . . [an] electric cooperative containing all rates and charges stated separately by type of service,
the rules and regulations of the utility, and any contracts that affect rates, charges, terms or
conditions of service." 16 Tex. Admin. Code § 25.5(75) (2002).
11. The statutory exceptions that are applicable to electric cooperatives are found in the
following sections of Chapter 39: section 39.155 (requiring an electric cooperative that owns
generation facilities and offers electricity for sale in Texas to report certain aspects of its operations
to the Commission to enable the agency to assess "market power"); section 39.157(e) (requiring the
Commission to establish by rule a code of conduct to protect against anticompetitive practices); 
section 39.203 (regulating transmission and distribution service); section 39.903 (establishing
"system benefit fund" to assist low-income electric customers); and, section 39.904 (concerning
legislative goals for renewable energy). Other than section 39.155, however, these exceptions apply 
only to an electric cooperative offering a "customer choice" among retail providers of electricity. 
See PURA § 39.002; see also PURA §§ 39.155, .157(e), .203, .903, .904.
12. The "postage-stamp" method of pricing results in a flat rate per megawatt of electricity
irrespective of the distance traveled by the electricity put into the ERCOT grid; thus, the analogy to
a postage stamp. See City Pub. Serv. Bd. v. Public Util. Comm'n, 9 S.W.3d 868, 872 (Tex.
App.--Austin 2000), aff'd, 53 S.W.3d 310 (Tex. 2001).


 PURA section 36.201, the statute overridden by PURA section 35.004(d), forbids the
Commission generally to "establish a rate or tariff that authorizes an electric utility to automatically
adjust and pass through to [its] customers a change in the utility's fuel or other costs." PURA
§ 36.201.
13. In rejecting the Commission's contention, the court invoked the definition of the word
"rate" found in PURA: "a compensation, tariff, charge, fare, toll, rental, or classification that is
directly or indirectly demanded, observed, charged, or collected by an electric utility for a service,
product, or commodity . . . and a rule, practice, or contract affecting the compensation, tariff, charge,
fare, toll, rental or classification that must be approved by a regulatory authority." City Pub. Serv.
Bd., 53 S.W.3d at 316 (quoting PURA § 31.002(15)) (emphasis added). 


 Because the questioned rules required each ERCOT utility to pay the facilities charge, the
court reasoned, a utility had no choice about whether to collect or pay the access-fee component; and,
the elements of that charge, fixed by the Commission, were "non-negotiable." Thus, the access-fee
formula amounted to a rule affecting the charge and a rate within the statutory definitions. City Pub.
Serv. Bd., 53 S.W.3d at 316-17.
14. The requirement applies unless the utility's tariff is included in the tariff of another utility. 
PURA § 35.007(b).
15. PURA section 39.203(h) states as follows: "A customer in a multiply certificated service
area may switch its retail distribution service provider among certificated retail electric utilities only
by disconnecting from the facilities of one retail electric utility and connecting to the facilities of
another retail electric utility." PURA § 39.203(h).